J-S45026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT MCDOWELL | |
| Appellant | No. 2407 EDA 2016 |

Appeal from the PCRA Order June 30, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015492-2008

BEFORE:  GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 31, 2017**

Robert McDowell (Appellant) appeals from the order entered on June 30, 2016, which denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On December 20, 2010, a jury convicted Appellant of, *inter alia*, two counts of first-degree murder for his role in the shooting deaths of two individuals.[1]   This Court affirmed Appellant's judgment of sentence on September 9, 2013, and our Supreme Court denied his petition for allowance of appeal on April 9, 2014.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We adopt the recitation of facts on page 2 of the PCRA court's opinion as our own. **See** PCRA Court Opinion, 10/21/2016, at 2 (quoting **Commonwealth v. McDowell**, 87 A.3d 374 (Pa. Super. 2013) (unpublished memorandum at 1)).

Appellant timely filed a counseled PCRA petition raising numerous ineffective-assistance-of-counsel claims for both trial and appellate counsel. The PCRA court granted a hearing on one claim, specifically that trial counsel was ineffective by giving Appellant legally incorrect information about his right to testify. A hearing was held on June 30, 2016, and on the same day, the PCRA court entered an order denying Appellant PCRA relief. Appellant timely filed a notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant has set forth eight questions for our review, *see* Appellant's Brief at 11-12, all of which suggest the PCRA court erred in denying relief on Appellant's ineffective-assistance-of-counsel claims. We review such claims mindful of the following.

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Benner*, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting *Commonwealth v. Perry*, 128 A.3d 1285, 1289 (Pa. Super. 2015)). "It is well-established that counsel is presumed effective, and the [petitioner] bears the burden of proving ineffectiveness." *Commonwealth v. Martin*, 5 A.3d

- 2 -

177, 183 (Pa. 2010). To overcome this presumption, Appellant must show each of the following: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.* Appellant's claim will be denied if he fails to meet any one of these three prongs. *Id.*

Following a review of the certified record and the briefs for the parties, we conclude that the opinion of the Honorable Glenn B. Bronson thoroughly addresses Appellant's issues and arguments and applies the correct law to findings of fact that are supported by the record. We discern no abuse of discretion. Therefore, we adopt the PCRA court's opinion of October 21, 2016 as our own and affirm the order denying Appellant PCRA relief based upon the reasons stated therein.[2] *See* PCRA Court Opinion, 10/21/2016, at 4-5 (concluding that Appellant waived his right to be represented by original counsel and that new counsel was not ineffective in failing to request a continuance);[3] *id.* at 5-8 (concluding that trial counsel advised Appellant properly about his right to testify and therefore was not ineffective);[4] *id.* at

_____

[2] The parties shall attach a copy of the PCRA court's October 21, 2016 opinion to this memorandum in the event of further proceedings.

[3] *See* Appellant's Brief at 24-34.
[4] *See* Appellant's Brief at 35-40.

8-12 (concluding that trial counsel was not ineffective for failing to request the trial court recuse itself because there was no meritorious basis for doing so);[5] *id*. at 12-15 (concluding trial counsel was not ineffective by failing to object to jury instructions);[6] *id*. at 15-17 (concluding trial counsel was not ineffective by failing to request a limiting instruction pursuant to **Bruton v. United States**, 391 U.S. 23 (1968), because there was no reasonable probability the outcome of the trial would have been different);[7] *id*. at 17-20 (concluding that trial counsel was not ineffective by failing to make non-meritorious objections regarding prosecutorial misconduct);[8] *id*. at 20-21 (concluding that claims of appellate counsel ineffectiveness were without merit);[9] and *id*. at 21 (concluding that there was no basis for a claim that the cumulative effect of all other errors resulted in prejudice).[10]

Order affirmed.

President Judge Gantman joins.

Judge Panella concurs in the result.

---

[5] **See** Appellant's Brief at 41-47.
[6] **See** Appellant's Brief at 54-60.
[7] **See** Appellant's Brief at 60-62.
[8] **See** Appellant's Brief at 47-52.
[9] **See** Appellant's Brief at 52-54.
[10] **See** Appellant's Brief at 62-63.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/31/2017</u>

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

ROBERT McDOWELL

CP-51-CR-0015492-2008

:



CP-51-CR-0015492-2008 Comm. v. Mcdowell, Robert
Opinion

7515739291

OPINION

CP-51-CR-0015492-2008

**FILED**

OCT 2 1 2016

Appeals/Post Trial
Office of Judicial Records

BRONSON, J.                                              October 21, 2016

## I. PROCEDURAL BACKGROUND

On December 20, 2010, following a capital jury trial before the Honorable Renee Cardwell Hughes, defendant Robert McDowell was convicted of two counts of first degree murder (18 Pa.C.S. § 2502), two counts of criminal conspiracy (18 Pa.C.S. § 903), one count of carrying a firearm on the streets of Philadelphia (18 Pa.C.S. 6108), and one count possessing an instrument of crime (18 Pa.C.S. § 907). On January 13, 2011, after the jury was unable to come to a unanimous decision concerning the death penalty, the Court imposed an aggregate sentence of two consecutive life terms, plus 15 to 20 years incarceration. On January 19, 2011, defendant filed a post-sentence motion, which the Court denied on February 4, 2011. Defendant was represented at trial and at sentencing by Gary Server, Esquire.

On September 9, 2013, the Superior Court affirmed defendant's judgment of sentence. The Pennsylvania Supreme Court denied *allocator* on April 9, 2014. Defendant was represented on appeal by David Rudenstein, Esquire. Defendant then filed a counseled petition under the Post-Conviction Relief Act ("PCRA") on April 6, 2015 ("Petition"). Defendant filed an Amended Petition for Post Conviction Relief ("Amended Petition") on March 2, 2016, raising

multiple claims of trial and appellate counsel ineffectiveness. As Judge Hughes had since left the bench, this matter was assigned to the undersigned judge. On June 30, 2016, following an evidentiary hearing, the Court entered an order dismissing defendant's PCRA Petition. This appeal followed.

## II. FACTUAL BACKGROUND

The factual background of this case was summarized by the Superior Court on defendant's direct appeal as follows:

> The victims in this case are 27–year–old Damian Holloway and 14–year–old Timmy Clark. Holloway was the apparent target of Drummond and [defendant]; the Clark child was apparently killed because he was an unfortunate witness present at the scene when Holloway was confronted.
>
> Much of the evidence in this case consisted of testimony from friends of Drummond and [defendant] to whom the pair had made incriminating admissions. At trial, some of these witnesses disavowed earlier statements because of a fear of reprisal. Evidence was presented that both Drummond and [defendant] had a motive to kill Holloway. Drummond, who is Caucasian, resented the fact that his sister was in a relationship with Holloway, who was African–American. Drummond and Holloway had recently been quarrelling because Drummond believed Holloway was "disrespecting" his sister. As for [defendant], his dispute with Holloway also involved his sister. Approximately three weeks before the murders, Holloway had an argument with [defendant's] sister during which he called her a "bitch." In response, she telephoned [defendant], who subsequently arrived at the scene yelling at and smacking Holloway, ordering him not to "f**k with his sister."
>
> Drummond and [defendant] confronted the victims in the early morning hours of July 13, 2007. Drummond and [defendant] surrounded the victims from the front and rear. The victims were made to kneel in the street with their hands interlaced behind their heads. [Defendant] was armed with a revolver but apparently "couldn't do it"; consequently Drummond took the gun from him and shot each victim in the head, execution-style. Drummond subsequently bragged about his actions to various witnesses while [defendant] acknowledged his participation.

Superior Court Opinion, filed 9/9/13 at pp. 2-3.

2

## III. DISCUSSION

Defendant claims that this Court erred in denying defendant relief as: 1) trial counsel was ineffective for failing to request more time to prepare for trial; 2) trial counsel failed to correctly advise defendant of his right to testify; 3) there was sufficient reason to request the trial judge to recuse herself, and failing to do so was ineffective assistance of counsel; 4) trial counsel was ineffective for failing to object to improper jury instructions; 5) trial counsel was ineffective for failing to object to the testimony of Amy Rudnitskas or to request a limiting instruction concerning her testimony; 6) defendant presented a valid claim of prosecutorial misconduct; 7) appellate counsel was ineffective; and 8) the cumulative effect of all errors denied defendant a fair trial. Amended Statement of Matters Complained of on Appeal. ("Statement of Errors") at ¶ 1.

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Yager*, 685 A.2d 1000, 1003 (Pa. Super. 1996) (citing *Commonwealth v. Legg*, 669 A.2d 389, 391 (Pa. Super. 1995)). The reviewing court "will not disturb findings that are supported by the record." *Id.* Moreover, "[w]here a PCRA court's credibility determinations are supported by the record, they are binding on the reviewing court." *Commonwealth v. White*, 734 A.2d 374, 381 (Pa. 1999) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 93-94 (Pa. 1998)).

Defendant's claims are premised upon the alleged ineffective assistance of counsel. Under Pennsylvania law, counsel is presumed effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based

3

on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973, 974-75 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694).

### A. Failure to Request More Time to Prepare

Defendant first alleges that trial counsel was ineffective for failing "to request more time to prepare for the trial after being made guilt phase counsel for the first time days before the double homicide trial began, and his related failures during trial." Statement of Errors at ¶ 1. This claim is waived.

David Rudenstein, Esquire, was initially appointed by the Court to represent defendant in the guilt phase of his capital murder trial, while Gary Server, Esquire, was appointed for purposes of the penalty phase hearing. However, just prior to commencement of trial, Rudenstein experienced a health issue and was unable to represent defendant at trial. N.T. 12/2/10 at 11. On December 2, 2010, before jury selection, the Court held an extensive colloquy with defendant concerning his options going forward, including that the Court would grant a continuance to permit Rudenstein to recover and the possibility of commencing trial with Server acting as lead counsel while Rudenstein acted in an advisory role. N.T. 12/2/10 at 12-16. The

4

Court informed defendant that all parties were willing to continue trial until Rudenstein was healthy. N.T. 12/2/10 at 16. At that time, the Court repeatedly emphasized to defendant that if he decided to go to trial with Server, defendant would waive any claim that Server was not prepared to go to trial. N.T. 12/2/10 at 18-20, 23, 27-28. The Court also permitted defendant time to meet with his family and Server to discuss his decision to proceed with trial or to continue trial until June 11, 2012. N.T. 12/2/10 at 33-34. At the conclusion of this extensive colloquy, defendant informed the Court that it was his decision to proceed to trial with Server acting as counsel and that he was waiving any claim that he was denied effective assistance of counsel premised upon counsel's preparation. N.T. 12/2/10 at 36-38.

Accordingly, the record is explicitly clear that defendant made a knowing and intelligent waiver of his right to be represented by Rudenstein and instead proceed to trial with Server. The record is also clear that defendant waived his right to assert that Server was ineffective for failing to move for a continuance.

In any event, there is nothing in the record to support defendant's claim that Server was unprepared. To the extent that defendant's claim that Server was unprepared is premised upon the other claims of ineffective assistance of counsel defendant raises on appeal, it is without merit for the reasons given below, rejecting defendant's remaining claims. No relief is due.

*B. Advising Defendant of his Right to Testify*

Defendant next asserts that the Court "erred in finding that trial counsel correctly advised [defendant] of his right to testify." Statement of Errors at ¶ 2. In his Amended Petition, defendant argued that counsel was ineffective for erroneously advising defendant not to testify as defendant "would be impeached through his prior record," including crimes which may not be

5

used as impeachment evidence. Amended Petition at ¶ 71, 76-78. The Court held an evidentiary hearing on this issue and found it to be without merit.

"The decision whether to testify in one's own behalf is ultimately to be made by the accused after full consultation with counsel." *Commonwealth v. Neal,* 618 A.2d 438, 440 (Pa. Super. 1992), *quoting Commonwealth v. Bazabe,* 590 A.2d 1298, 1301 (Pa. Super. 1991). In order to establish a claim of ineffective assistance of counsel for failing to call a defendant to the stand, the defendant must establish that: 1) counsel interfered with defendant's freedom to testify; and 2) counsel gave specific advice so unreasonable as to negate a knowing and intelligent decision by the defendant. *Id.*

Evidence of a witness' prior conviction of a crime may be introduced to impeach the credibility of that witness if the conviction was for a crime involving dishonesty or making false statements, that is, a *crimen falsi* offense, and the date of the conviction or the final day of confinement is within ten years of the trial. Pa.R.E. 609(a) & (b); *see Commonwealth v. Rivera,* 983 A.2d 1211, 1226 (Pa. 2009); *Commonwealth v. Young,* 638 A.2d 244, 246 (Pa. Super. 1994). Moreover, a defendant's criminal activity that is not admissible under Rule 609 may still be admitted if defendant testifies in a manner that falsely suggests that he never engaged in such activity. As the Superior Court has stated, "[a] defendant "opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *Commonwealth v. Nypaver,* 69 A.3d 708, 718 (Pa. Super. 2013).

At a PCRA hearing, the defendant has the burden of establishing by a preponderance of the evidence that he is eligible for relief under the Act. 42. Pa.C.S. § 9543(a). At the hearing held in this matter, defendant testified on his own behalf and presented the testimony of Michael McDowell. The Commonwealth presented the testimony of trial counsel Gary Server. The

6

evidence presented at the hearing established that trial counsel accurately advised defendant concerning his right to testify and the possible use of defendant's criminal history.

Server's testimony at the hearing established the following. Server was well aware that *crimen falsi* convictions would be admissible to impeach defendant's credibility if he testified at trial. N.T. 6/30/16 at 75-76. Prior to trial, Server met with defendant multiple times and discussed defendant's right to remain silent and defendant's criminal history. N.T. 6/30/16 at 72-73. After the close of the Commonwealth's case, Server again discussed with defendant the possibility of defendant testifying. N.T. 6/30/16 at 73. During this discussion, Server informed defendant that his prior *crimen falsi* convictions could be used as impeachment evidence should defendant testify. N.T. 6/30/16 at 73-74, 100. Server correctly identified four of defendant's prior convictions that would qualify as *crimen falsi* evidence, that is, his convictions for theft, unauthorized use of a motor vehicle, receiving stolen property, and retail theft. N.T. 6/30/16 at 75-77. Server also informed defendant that, should defendant testify, he would risk "opening the door" to the admission of defendant's prior criminal activity regarding guns, including a conviction for possession of a firearm on the streets of Philadelphia. N.T. 6/30/16 at 75, 77-78. Server was concerned that should defendant volunteer some statement inconsistent with his past involvement with firearms, the Commonwealth may have been permitted to prove that defendant had, on a prior occasions, been involved in unlawful activity involving guns. N.T. 6/30/16 at 77-82, 100. Server informed defendant of the potential benefits and risks associated with testifying and permitted defendant to make the decision without pressure from Server. N.T. 6/30/16 at 86-87. The Court found Server's testimony to be credible. N.T. 6/30/16 at 130.

Accordingly, the record of the evidentiary hearing establishes that trial counsel's advice concerning defendant's right to testify was not unreasonable. Counsel correctly informed

7

defendant that his past convictions for theft, unauthorized use of a motor vehicle, receiving stolen property, and retail theft would all qualify as *crimen falsi* under the definition of Pa.R.E. 609. Counsel also correctly informed defendant that, should he take the stand, he would run the risk of opening the door to possible cross-examination for defendant's other criminal activity, should defendant testify in such a way that was inconsistent with that prior conduct. No relief is due.

### C. Trial Court Recusal

Defendant next asserts that the Court erred "in finding, without a hearing, that there was not sufficient reason to request the original trial judge recuse herself," and that the failure to request recusal was ineffective assistance of counsel. Statement of Errors at ¶ 3. This claim is without merit.

In his Amended Petition, defendant averred that the trial court's actions raised a substantial doubt as to the court's ability to preside impartially in that the Court: 1) "made several statements that were improper" demonstrating bias in favor of the Commonwealth; 2) demonstrated bias by screaming at defendant's mother; 3) demonstrated bias during the colloquy of defendant concerning his decision to continue to trial without Rudenstein; and 5) made an outburst, not on the record, but which was detailed in a news report. Amended Petition at ¶ 112. Defendant asserted that, given the Court's demonstrated bias against defendant, trial counsel should have moved to have the trial judge recuse herself. Amended Petition at ¶¶ 114-116.

"A party that seeks recusal of a judge bears the burden to produce evidence establishing bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Hutchinson*, 25 A.3d 277, 319 (Pa. 2011) (internal citations and quotations omitted). Denial of a motion to recuse is reviewed for an abuse of discretion. *Id.*

8

1. Improper Statements

Defendant avers that the trial court made several improper statements that demonstrated her bias against defendant. Amended Petition at ¶ 112(e). In the first of these statement, the court stated, "You don't have to object. I have it under control." N.T. 12/10/10 (Vol. 2) at 165. This statement of the Court followed a *defense* objection, and was part of an effort by the judge to ensure that inadmissible portions of a witness's statement, prejudicial to the defendant, were not heard by the jury. Obviously, this did not demonstrate bias against the defendant.

In the next statement, the Court stated, "very good," allegedly indicating that the judge approved of a witness's testimony. That comment followed questioning of a witness by the judge in the effort, described above, to prevent prejudicial material in the witness's statement from being heard by the jury, and was clearly a figure of speech to denote that the court had concluded its questioning. The full statement of the Court was, "Very good. Then we can skip over to the next page," whereupon the prosecutor took over the questioning. N.T. 12/10/10 (Vol. 2) at 166. Hence, the comment, "very good," did not demonstrate bias.

Next, defendant claims that statements made by the trial court in ruling on defendant's motion for a judgment of acquittal demonstrated prejudice. While the Court then stated that the evidence demonstrated defendant's guilt, the Court was required to state, in response to defendant's motion, whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient for the case to go to the jury. The statements, in context, do not demonstrate bias. N.T. 10/15/10 at 54-55.

Next, defendant complains of statements made by the trial court, outside the presence of the jury belittling defendant's claim of an alibi. N.T. 12/15/10 at 82-85. These comments were made in the context of the trial court ruling on defendant's request for an alibi jury instruction.

Since the Court subsequently ruled that it would grant defendant's request for an alibi instruction, the Court's comments did not demonstrate bias. N.T. 12/16/10 at 2.

Next, defendant complains that in charging the jury, the Court stated, "think deeply about my evidence." N.T. 12/17/10 at 22. Asking the jury to carefully consider the evidence does not demonstrate bias.

Finally, defendant complains of the following, excerpted from the jury charge: "With respect to the first 12, go, deliberate, bring me a verdict. Just know from the bottom of my heart, when I say heart, it is my heart. It is [prosecutor] Carlos Vega's heart. It is the Clark family. It is the Holloway family." Amended Petition at ¶ 112(e). This completely misleading excerpt from the jury charge, referencing only the prosecutor and the families of the victims, neglected to include the remainder of the trial court's comments, which continued: "It is [defense counsel] Mr. Wallace, [defense counsel] Mr. Bowe, [defense counsel] Mr. Server, the Drummond family, the McDowell family, it is all of us. We are so grateful and so appreciative of you." N.T. 12/17/10 at 94. There is nothing objectionable about the trial court expressing appreciation for the service of the jurors on behalf of all those associated with the trial, including defendant and his family.

## 2. Trial Court Reprimand of Defendant's Mother

Defendant asserts that the trial court's interaction with defendant's mother during jury selection warranted recusal. Amended Petition at ¶ 112(b)-(c). In particular defendant complains that the judge yelled at Ms. McDowell while making inappropriate comments to her. *Id.*

It is true that the trial judge severely reprimanded Ms. McDowell. However, during the *voir dire* process, defendant's mother was texting on her phone, intimidating jurors, distracting

10

everyone around her, and talking during court about the jury. N.T. 12/3/10 at 192-193.

Moreover, this was not Ms. McDowell's first time violating the Court rules. N.T. 12/3/10 at 194.

Under these circumstances, the trial judge was well justified in reprimanding Ms. McDowell for her behavior. While the judge made statements that were injudicious, (e.g., "Let me explain to you what capital punishment means. I will execute your son." N.T. 12/3/10 at 192), she was very clearly attempting to control Ms. McDowell's outrageous behavior in lieu of excluding her from the courtroom and depriving defendant of the presence of his mother during the trial. N.T. 12/3/10 at 194-195 (threatening Ms. McDowell with contempt for any additional violations but permitting her to remain in the courtroom). Accordingly, the judge's behavior did not demonstrate bias or prejudice against the defendant.

3. Trial Court Colloquy

Defendant asserts that the trial court's colloquy with defendant regarding the loss of Rudenstein as guilt phase counsel somehow provided grounds for recusal. Amended Petition at ¶ 112(d). However, as detailed in Section III.(A) above, during this colloquy the trial court thoroughly questioned defendant concerning his decision to proceed with Gary Server as trial counsel, informed defendant multiple times that it would grant a continuance to permit Rudenstein to try the case, and permitted defendant sufficient time to consult with his family and counsel concerning this decision. As the trial court's actions were entirely appropriate, counsel would have no grounds to seek the trial court's recusal on this basis.

4. Outburst Documented by Newspaper Article

Finally, defendant claims that recusal was required by an outburst of the judge that was not of record, but was documented in a newspaper article. Amended Petition at ¶

11

112(f). However, a reporter's version of events in a newspaper article is not evidence. *Commonwealth v. Griffin*, 137 A.3d 605, 609-10 (Pa. Super. 2016).

In any event, the article in question only reported that the judge became angry and made comments to the defendants after the jury deadlocked during the penalty phase, requiring the Court to sentence defendant to life in prison instead of the death penalty. The comments, as reported, were inappropriate ("Please don't smile and please don't think you won, gentlemen, because now you have to deal with me. You'd be better off being sentenced to death because then you'd have the Supreme Court."). Amended Petition Exh. C. However, the article noted that the Court's comments followed the defendant smiling and slapping his codefendant on the back as the jurors, several of whom were "plainly upset," left the courtroom. Accordingly, even if defendant had proffered competence evidence of the alleged comments, they would only establish that the judge responded injudiciously to the inappropriate behavior of the defendant following the verdict. They did not demonstrate that the judge had a fixed bias and could not fairly preside over the trial.

Because the record establishes that there was no basis for a meritorious recusal motion, trial counsel could not have been ineffective for failing to file such a motion. No relief is due.

*D. Jury Instructions*

Defendant asserts that trial counsel "was ineffective for his failure to object to the jury trial instruction on specific intent to kill and on the instruction to choose 'first or third degree.'" Statement of Errors at ¶ 4. This claim is without merit.

The standard of review pertaining to jury instructions is as follows:

The trial court possesse[s] broad discretion in phrasing its instructions to the jury and [is] permitted to choose its own wording so long as the law [is] clearly,

12

adequately and accurately presented to the jury for consideration. Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the charge in its entirety, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. Instructions will be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations.

*Commonwealth v. Fletcher*, 986 A.2d 759, 802 (Pa. 2009), quoting *Commonwealth v. Rainey*, 928 A.2d 215, 242-243 (Pa. 2007).

1. Instructions Concerning Specific Intent to Kill

Defendant alleges that the trial court improperly instructed the jury regarding the required specific intent to kill for first degree murder, and that trial counsel's failure to object to this instruction prejudiced defendant. Amended Petition at ¶ 54(r)-(t). This argument is frivolous.

The trial court's instructions concerning specific intent to kill were entirely accurate, and nearly identical to the Pennsylvania Suggested Standard Criminal Jury Instructions. First, the trial court detailed the elements required for the jury to find defendant guilty of first degree murder, including specific intent to kill. N.T. 12/17/10 at 52; *see* Pa.S.S.J.I. (Crim.) § 15.2502A. The Court then read the standard definition of specific intent to kill. N.T. 12/17/10 at 52-53; *see* Pa.S.S.J.I. (Crim.) § 15.2502A. Because the Commonwealth did not contend that defendant did the actual killing, the Court, using the standard instructions, made it absolutely clear to the jury that it could not find the defendant guilty of first degree murder under a conspiratorial or accomplice theory of liability unless the defendant, himself, had the specific intent to kill:

> A Defendant may not be found guilty of first degree murder where the death is caused by another unless a Defendant, himself, was a conspirator or an accomplice and had the specific intent or the goal to bring about first degree murder.

N.T. 12/17/10 at 72; *see* Pa.S.S.J.I. (Crim.) § 8.306B. After the deliberating jury asked for clarification between conspiracy and accomplice liability, and for an explanation of first degree

13

murder "when the person does not pull the trigger and malice is present," N.T. 12/17/10 at 99, the Court re-read the standard instructions regarding specific intent to kill, and the requirement that the non-shooter have such intent to be guilty of first degree murder as a conspirator or accomplice. N.T. 12/17/10 at 106-112. While augmenting the text of the standard instructions, the judge repeatedly emphasized that specific intent to kill requirement. N.T. 12/17/10 at 109-112 ("if I'm not the person that actually caused the death, I have to share that same intent with the person who did actually cause the death," "It doesn't matter who the doer is, as long as we have agreed that the goal of our conspiracy is murder in the first degree," "both the doer and the non-doer have to share the specific intent to kill"). Accordingly, trial counsel had no basis for objecting to the specific intent to kill aspect of the jury instructions.

2. Instructions to Choose First or Third Degree Murder

Defendant asserts that trial counsel should have objected when the trial court instructed the jury to choose first or third degree murder. In particular, defendant contends that the following instruction of the Court essentially directed the jury to find either first or third degree murder, and not to return a verdict of not guilty: "A person could be found not guilty of homicide but if a homicide exists on this record, it is your responsibility, not mine, to tell me whether it was first or third [degree murder]." Amended Petition at ¶¶ 84, 87-91. Defendant contends that since there clearly was a homicide on the record of this case, the only option for the jury was to find defendant guilty of one of the two possible degrees of murder. Amended Petition at ¶¶ 88.

By pulling the above excerpt from the jury instructions out of context, defendant ignores the clear instructions of the Court that directed the jury to consider a verdict of not guilty. The Court's instructions included the following:

14

*A person can be not guilty of every degree of homicide* but if a person is guilty of having committed a homicide, it is the jury's responsibility to tell me what degree. I don't get to decide. You must tell me which degree of homicide has been made out.

N.T. 12/17/10 at 49 (emphasis added). And again:

Now, ladies and gentlemen, these are the two types of homicides that are before you. In order of seriousness, they are first degree murder and third degree murder. You can find a person guilty of homicide but if you find a person guilty of homicide, you have to tell me what degree of murder has been found. *A person could be not guilty of all degrees.* A person could be not guilty of first. A person could be not guilty of third. A person could be not guilty of homicide but if a homicide exists on this record, it is your responsibility, not mine, to tell me whether it was first or third.

N.T. 12/17/10 at 57 (emphasis added). Finally, in reviewing the verdict sheet in this matter, the trial court again instructed:

*Remember what I told you, a person can be not guilty of homicide and if a person is not guilty of homicide, you go straight across that top line…and you write not guilty* but if you determine that Timothy Clark's death is a homicide, then you have to tell me what degree…. *So a person can be not guilty of all degrees* but if guilty of a homicide, you must tell me which degree. I will not be permitted to decide.

N.T. 12/17/10 at 90-91 (emphasis added).

These instructions make it clear that it was for the jury to decide whether or not defendant was guilty of any degree of homicide, and that it could find defendant not guilty of all of the homicide charges. No relief is due.

### E. Testimony of Amy Rudnitskas

Defendant next alleges that trial counsel "was ineffective for his failure to object to the testimony of Amy Rudnitskas or to request a limiting instruction such that her testimony would apply only to the co-defendant Drummond." Statement of Errors at ¶ 5. Amy Rudnitskas testified at trial to statements made to her by co-defendant Gerald Drummond, the alleged shooter in the case. These statements were admissible against Drummond as admissions, *see*

15

Pa.R.E. 803(25), but not admissible against defendant. Moreover, under *Bruton v. United States,* 391 U.S. 23 (1968), if the out-of-court statements of Drummond inculpated defendant, and were heard by the jury during a joint trial, then defendants right under the Confrontation Clause to cross-examine Drummond would be violated if Drummond did not testify at the trial. Defendant argues first, that Drummond's statements to Rudnitskas did incriminate him in violation of *Bruton,* and second, that his rights were further violated since the jury was never told that the statements were only admissible against Drummond, and not against defendant.

As defendant acknowledges, defendant's name was removed from Drummond's statements and replaced with neutral pronouns before the statements were heard by the jury. Amended Petition at ¶¶ 22. When that is done, and when the jury is given an appropriate limiting instruction, there is no violation of *Bruton* even where, as defendant claims here, other evidence implies that the neutral pronoun is actually referring to the defendant. *See Commonwealth v. Daniels,* 104 A.3d 267, 294 (Pa. 2014) (contextual implication does not violate *Bruton*).

However, it is true that counsel should have requested a limiting instruction, advising the jury that Rudnitskas' statements could only be used as evidence against Drummond, and not against defendant. Nevertheless, defendant is not entitled to relief since he could not have been prejudiced by this oversight. As stated above, Rudnitskas' rendition of the edited statements of Drummond made absolutely no mention of defendant. Moreover, the evidence against defendant was extremely compelling. *See* Superior Court Opinion filed 9/9/13 on defendant's direct appeal at pp. 4-12 (rejecting defendant's sufficiency of the evidence and weight of the evidence claims). Among other things, defendant admitted his involvement in the crime to Erica Marrero and to Rudnitskas. N.T. 10/9/10 at 217-219; N.T. 12/10/10 at 69-70. Because there is no reasonable probability that the outcome of the trial would have been different had the trial judge given a

limiting instruction with regard to a statement that made no mention of defendant, defendant's claim was properly rejected.

### F. Prosecutorial Misconduct

Defendant next asserts that the Court "erred in denying without a hearing the prosecutorial misconduct claim of Defendant, given the concerns the Superior Court expressed in their unpublished decision on appeal." Statement of Errors at ¶ 4. The prosecutorial misconduct claim raised by defendant in his Amended Petition was that counsel was ineffective for failing to object to certain remarks of the prosecutor. Amended Petition at ¶¶ 129, 133, 136. Specifically, defendant alleged that trial counsel should have objected when the prosecutor: 1) "continually brought up alleged, unproven threats by family members of the defendants;" 2) asked defendant's sister, Tara McDowell, and co-defendant's brother, David Drummond, to stand during closing arguments; and 3) referred to decedent Timothy Clark as "little boy" and to co-defendant Drummond's confessions as bragging. Amended Petition at ¶¶ 117, 119, 132. This claim is without merit.

"It is well-established that 'comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.'" *Commonwealth v. Arrington*, 86 A.3d 831, 853 (Pa. 2014) (quoting *Commonwealth v. Bryant*, 67 A.3d 716, 727 (Pa. 2013). As our courts have repeatedly stated, "prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009) (quoting *Commonwealth v. Chmiel*, 889 A2d. 501, 544 (Pa. 2005). Further, "[i]f a challenged remark is made in response to the defense's closing argument, it will

generally be deemed fair response and hence permissible comment." *Commonwealth v. Smith*, 995 A.2d 1143, 1162 (Pa. 2010) (quoting *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 110 (Pa. 1998)). Finally, a jury is presumed to follow instructions provided by the Court. *Commonwealth v. Eichinger*, 108 A.3d 821, 846 (Pa. 2014).

1. Threats to Witnesses

Defendant alleges that trial counsel should have objected when the prosecutor "brought up alleged, unproven threats by family members of the defendants, and asked questions of these witnesses about these threats." Amended Petition at ¶ 117. At trial, all of the witnesses to whom defendant now refers recanted their earlier police statements on the witness stand. In all of these instances, the Commonwealth questioned the witnesses concerning their fear of testifying in order to elicit the reason why they were recanting their testimony at trial. Accordingly, questioning the witnesses about threats and intimidation against them was entirely proper. *See e.g. Commonwealth v. Mollett*, 5 A.3d 291, 308-09 (Pa. Super. 2010) (questioning a witness concerning fear of a defendant is permissible in order to "attempt to obtain an explanation as to a possible inconsistent statement by a witness"). As questioning the witnesses about the reason for their recantation was entirely appropriate, trial counsel had no basis to object.

2. Asking Tara McDowell and David Drummond to Stand

Defendant also alleges that trial counsel should have objected when the prosecutor asked defendant's sister, Tara McDowell, and co-defendant Drummond's brother, David Drummond, to stand during closing arguments. Amended Petition at ¶ 119. However, trial counsel did object to this action by the Commonwealth. Following the Commonwealth's closing arguments, but before the trial court began its closing instructions, trial counsel joined with counsel of co-defendant Drummond in objecting to the actions of the prosecutor. N.T. 12/17/10 at 4-5. The

18

trial judge overruled trial counsel's objection. N.T. 12/17/10 at 5-6. As trial counsel did object to the actions of the prosecutor, defendant's claim is without merit.

Moreover, even if counsel had failed to object, the Superior Court, on defendant's direct appeal, ruled that this instance of prosecutorial misconduct did not prejudice defendant. As the Superior Court stated:

> We next review the prosecution's invitation to Tara McDowell and David Drummond to stand up in the courtroom gallery and introduce themselves. We agree that such behavior is improper and an insult to courtroom decorum. We also find that such conduct bears the possibility of introducing evidence through impermissible means. *Nonetheless, we are unable to discern any prejudice to appellants under the circumstances here.* Furthermore, neither appellant has described how he was prejudiced by this conduct and both merely assert a boilerplate claim. Ultimately, although we find the prosecutor's actions to be disturbing, *we can identify no reversible error as to appellants.*

Superior Court Opinion, filed 9/9/13 at p. 18 (emphasis added). Accordingly, no relief is due.

### 3. Referring to Timothy Clark as "Little Boy" and Characterizing Confession of Co-Defendant as Bragging

Defendant also alleges that trial counsel should have objected to the Commonwealth's closing arguments when the prosecutor referred to witness Timothy Clark as "little boy" and characterized co-defendant Drummond's confessions as bragging. Amended Petition at ¶ 132. These assertions of the prosecutor were grounded in the evidence presented at trial. Witnesses Antonia Tisdale and Nicole Penrose both referred to Clark, a 14 year-old, as "little boy." N.T. 12/9/10 at 46, 53; 12/14/10 at 20, 23, 26-27. Similarly, the comments that co-defendant Drummond made to Amy Rudnitskas, Nicole Penrose, and Thomas Zehnder, can reasonably be interpreted as boasting about the killings. Rudnitskas testified that co-defendant Drummond bragged about the killing, saying that the "nigger got what he deserved," and that Clark was "a casualty of war." Rudnitskas also testified that Drummond sounded proud while he was making these statements. N.T. 12/9/16 at 210-214. Penrose testified that she informed police of three

19

conversations that she had with co-defendant Drummond, including one during which Drummond confessed to the murders, stated that his nickname, "G", "is for gangsta and [stated that] he was an original gangsta." N.T. 12/14/10 at 25-27. Likewise, Zehnder testified that he overheard Drummond confess to the murder and state that he "was the OG [Original Gangster] now." N.T. 12/10/10 (Vol. 1) at 62-63. All of these comments could reasonably be interpreted as boasting. As the Commonwealth's statements were based on the evidence adduced at trial, trial counsel would not have had a valid reason to object them during the Commonwealth's closing arguments. *Judy*, 978 A.2d at 1020.

### G. Appellate Counsel Ineffectiveness

Defendant also asserts that the Court erred "in denying, without a hearing, the claim that appellate counsel was ineffective." Statement of Errors at ¶ 5. This claim is without merit.

In his Amended Petition, defendant asserted that appellate counsel was ineffective for failing to raise on appeal numerous claims of trial counsel ineffectiveness. Amended Petition at ¶ 141. Defendant further alleged that appellate counsel was ineffective for asserting boilerplate claims on appeal regarding defendant's prosecutorial misconduct claim. Amended Petition at ¶¶ 145-147.

Any allegation that appellate counsel was ineffective for failing to raise claims of trial counsel ineffectiveness on direct appeal are frivolous. Under *Commonwealth v. Holmes*, 79 A.3d 562, 577-78 (Pa. 2013), claims of trial counsel ineffectiveness are not reviewable on direct appeal, and must await collateral review, absent two limited exceptions, neither of which is applicable here.[1]

---

[1] The exceptions are for (1) a discrete claim of ineffectiveness that is "both meritorious and apparent from the record so that immediate consideration and relief is warranted," or (2) "where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness" with good cause shown and a knowing and express waiver of PCRA rights. *Holmes*, 79 A.3d at 577-578.

As for defendant's contention that counsel submitted a boilerplate claim, it is true that the Superior Court stated that counsel did submit such a claim regarding the prosecutor's improper invitation to two spectators in the room to stand and introduce themselves during his closing argument. However, the Superior Court further stated, in denying defendant relief, that "we are unable to discern any prejudice to appellants under the circumstances here." Superior Court Opinion, 9/9/13 at 18. No relief is due.

### H. Cumulative Effect of Errors

Finally, defendant asserts that "the cumulative effect of all errors presented in the PCRA resulted in a miscarriage of justice such that the PCRA Court should have granted the PCRA on that basis. This claim is without merit.

"It is well established that no number of failed ineffectiveness claims may collectively warrant relief if they do not do so individually. Yet, when the failure of individual claims is based upon a lack of prejudice, the cumulative prejudice arising from those individual claims may properly be considered." *Commonwealth v. Simpson,* 112 A.3d 1194, 1205-06 (Pa. 2015) (citations omitted). While defendant's claim regarding a *Bruton* violation, and one of his claims regarding ineffective assistance of appellate counsel, were dismissed, at least in part, based on lack of prejudice, the Court is confident that the cumulative effect of any prejudice arising from these claims would not have affected the outcome of the trial. Accordingly, no relief is due.

## IV. CONCLUSION

For the foregoing reasons, the Court's order dismissing Defendant's PCRA petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

21

**Commonwealth v. Robert McDowell**
**Type of Order: 1925(a) Opinion**

**CP-51-CR-0015492-2008**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

> Shannon K. McDonald, Esquire
> 27 S. Darlington St.
> West Chester, PA 19382

Type of Service:     ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**District Attorney(s):**

> Hugh J. Burns, Jr., Esquire
> Chief, Appeals Unit
> Philadelphia District Attorney's Office
> Three South Penn Square
> Philadelphia, PA 19107

Type of Service     ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**Additional Counsel/Party:**

> Joseph D. Seletyn, Esquire
> Prothonotary
> Office of the Prothonotary – Superior Court
> 530 Walnut Street, Suite 315
> Philadelphia, PA 19106

Type of Service:     ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**Dated: October 21, 2016**

Jonathon M. Frisby
Law Clerk to Hon. Glenn B. Bronson